(20 App. Div. 632.)

DAVIS PROVISION CO. v. FOWLER BROS., Limited, et al.  (No. 2.)

(Supreme Court, Appellate Division, Third Department.  September 8, 1897.)

SALES—COMMISSIONS—EVIDENCE—ACQUIESCENCE.

Plaintiff corporation bought large quantities of meat of defendant corporation from 1886 to 1893. Up to July, 1889, plaintiff was allowed a certain per cent. of the amount purchased as commissions, but defendant testified that it was mutually agreed in July, 1889, that plaintiff would no longer be entitled to such commissions,—which agreement plaintiff denied. Plaintiff's books showed no monthly charges for such commissions until several months after July, 1889, and then the books showed monthly charges. Two of defendant's officers were members of plaintiff's board of directors, and, as such, caused to be entered, in plaintiff's minutes, resolutions to the effect that certain matters of dispute between plaintiff and defendant were settled in a certain way. Subsequently plaintiff's board of directors annulled some of these resolutions, but did not annul resolutions giving plaintiff certain advantages, and providing that from June, 1891, plaintiff would be entitled to the same commission it received prior to July, 1889. From July, 1889, to June, 1891, defendant sent plaintiff statements giving no credit for such commissions, and plaintiff made no protest. *Held*, that plaintiff was not entitled to commissions for such period.

Appeal from judgment on report of referee.

Action by the Davis Provision Company against Fowler Bros., Limited, and another. From a judgment for plaintiff upon the report of a referee, defendants appeal. Reversed.

Argued before PARKER, P. J., and LANDON, HERRICK, PUTNAM, and MERWIN, JJ.

Wilton C. Percy and J. Newton Fiero, for appellants.

T. F. Conway, for respondent.

LANDON, J. The plaintiff claimed and has recovered a commission of 1 per cent. upon all meats purchased by the plaintiff directly of the defendant the Anglo-American Provision Company during the period from July, 1889, to June 24, 1891. The parties began dealing with each other in 1886, under an agreement that the defendant the Anglo-American Company should allow the plaintiff this commission. Said defendant did allow it until July, 1889, and then stopped the commission until June 24, 1891, and thereafter allowed it. The defendant's contention is that in July, 1889, the allowance was stopped by the mutual agreement of the parties, in connection with an agreement that plaintiff was to be furnished goods at the lowest market prices. The question here to be considered is whether such new agreement was made. My examination leads me to the conclusion that it was made, and that the referee's finding to the contrary is against the clear weight of the evidence. Anderson Fowler and Robert Stobo testified that it was made. The defendant testified that it was not made. The written evidence, consisting of the plaintiff's entries in its ledger respecting the commissions, the so-called minutes of the proceedings of plaintiff's board of directors read in evidence by the plaintiff, the accounts rendered by the respective parties during the period in question, and the acts of the parties, show conclusively, I think, that the allowance of the commission was stopped by the agreement of the parties during the time for which the plaintiff now claims it.

1. In action No. 1 (47 N. Y. Supp. 205) I have referred to the meeting of the plaintiff's board of directors in Chicago, June 23 and 24, 1891, at which the three directors of the plaintiff, Anderson Fowler, Robert Stobo, and Henry Davis, were present. The minutes, as read in evidence, contain the following:

"In regard to future business between the Davis Provision Co. and the Anglo-American Provision Co. the arrangement is as follows: The Davis Provision Co. get one % from this date on all goods purchased by them from the Anglo-American Provision Co., or sold by them for the Anglo-American Provision Co."

The board of directors of plaintiff was afterwards changed so as to. give Davis control, instead of Fowler. and the proceedings of the board as recorded in the corporate book under date of July 24, 1891, purporting to recite a resolution and an agreement by which the claims of the plaintiff against the Anglo-American Provision Company were settled, were "reconsidered, rescinded, and annulled," but the entry, as quoted above, was not challenged. The entry is pregnant with the suggestion that the plaintiff had not been receiving the 1 per cent. commission.

2. The plaintiff's bill of particulars contains the following items of commissions: "1889: July, $123; August, $704.99; September, $223.85; October, $29.01." The total of these items is $1,081.28. The plaintiff's ledger does not contain these items, month by month, as above specified, but under date October 31, 1889, their aggregate, $1,081.28, is charged to defendant. The bill of particulars proceeds with the following items: "November, $34.65; December, $159.07; January, $127.38." The plaintiff's ledger does not contain these monthly items, but their aggregate, $321.10, charged to defendant, January 31, 1890. Thereafter plaintiff's ledger contains monthly charges for commissions, the same as the bill of particulars, down to March 31, 1891, making a total of $3,034.49. The defendant's books show a credit to plaintiff of $80.12 for July (1889) brokerage. The plaintiff was entitled to brokerage upon such sales of defendant's goods as it made as a broker. This sum, credited, leaves a balance of $2,954.37. Under date of August 31, 1891, the plaintiff's ledger contains this credit to defendant: "Commission of $2,954.-37." Now, why were the claims for commissions for July, August, September, and October, 1889, not charged upon the ledger until October 31, 1889,—over three months after the alleged agreement of July, 1889, to discontinue the commissions? It looks like an afterthought. Why, in August, after the directors' meeting of July 24, 1891, did the plaintiff credit the defendant with all the commissions charged against it during the period in dispute? On January 20, 1892, the plaintiff renewed the charge against the defendant, thus: "To commission, $2,954.37." The charge enabled Mr. Davis to say to Mr. Fowler, when he presented him with an account of his claims: "These items are all on our books."

3. During the period in question, the defendant did not credit the plaintiff with any commissions, and yet rendered it monthly accounts, and the plaintiff did not during that period claim commissions, but made the claim months after it had expired. Referring again to the directors' meeting of July 24, 1891. we observe that Fowler and Stobo,

two of the three directors of the plaintiff, were acting at that meeting in this respect in the interest of the defendants, and, being in the majority, controlled the action of the board, and that such action, if prejudicial to the plaintiff, was voidable at its election.    Still, where benefits conferred upon the plaintiff were in connection with burdens imposed and in consideration of them, the plaintiff could not accept the benefits and repudiate the burdens.    Nor could the plaintiff do so if the action was an agreement.    Now, the plaintiff accepted the following benefits then accorded:    A credit of $1,803.70, the sale of certain meats to defendant, the allowance of 1 per cent. commission from that date.    Mr. Davis accepted the confirmation of his right to a salary of $5,000 per year for the past and future, and the semi-annual dividend of 5 per cent. then declared.    It is not unreasonable to suppose that the plaintiff and Mr. Davis, in consideration of what they obtained, understood that their then unpressed claim for commissions was extinct, and thus the correction of their books by the credit of August 31, 1891, of the commissions charged for the disputed period.    We think this claim, like Fowler's claim for interest, referred to in action No. 1, was a makeweight, and fictitious.

The judgment should be reversed; the referee discharged; new trial granted; costs to abide the event.    All concur.